CROWNSHIELD TRADING CORPORATION, Appellant, *v.* ELLIS P. EARLE, Respondent.

First Department, February 10, 1922.

**Partnership — complaint in action at law for damages for breach of agreement to enter upon joint adventure not demurrable where there was no actual partnership — remedy at law — action for accounting not sole remedy of wronged partner.**

A complaint states a cause of action at law for the breach of a contract to engage in a joint adventure which alleges, in substance, that the plaintiff and defendant agreed to enter upon a joint adventure to sell surplus cotton linters for the United States upon a commission, the expenses incurred by each party to be borne by such party and the profits to be shared equally, the contract with the government to be taken in the name of the defendant, and which sets forth in detail the terms of the agreement and further alleges its performance on the part of the plaintiff, but that the defendant, *immediately* after the contract with the government was signed, refused to allow the plaintiff to participate in handling the linters and failed to perform his part of the agreement and after receiving commissions, of which he has paid the plaintiff nothing, refused to proceed with the sale of the linters and canceled the contract with the government, and which further alleges that defendant's failure to perform damaged the plaintiff in a specified sum for which judgment is demanded.

Such a complaint is not demurrable on the ground that an action at law could not be maintained until an accounting was had, as under the allegations no partnership ever existed between the parties. There was, at most, an agreement to form a partnership which the defendant refused to perform and the plaintiff seeks damages by reason of such breach.

*It seems,* that even though the allegations of the complaint were sufficient to show that the parties had entered into a partnership agreement, and that thereafter

the defendant wrongfully excluded the plaintiff from a participation therein, the plaintiff might, nevertheless, not only sue for an accounting, but independently of seeking such equitable relief, bring an action at law for damages sustained by reason of the defendant's breach.

APPEAL by the plaintiff, Crownshield Trading Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of September, 1921, as resettled by an order entered in said clerk's office on the 17th day of September, 1921, sustaining defendant's demurrer to the complaint for insufficiency and granting his motion for judgment on the pleadings with leave to plaintiff to plead over, and denying plaintiff's motion for judgment on the pleadings.

*Frederic H. Cowden* of counsel, for the appellant.

*Greene & Hurd* [*Daniel S. Murphy* of counsel; *Richard T. Greene* with him on the brief], for the respondent.

MERRELL, J.:

The action is brought at law to recover the sum of $200,000 alleged as damages by reason of defendant's breach of contract and failure to pay over to the plaintiff, an alleged joint adventurer with the defendant, one-half of certain commissions received by the defendant, and by reason of defendant's refusal to perform the said contract as agreed between the parties.

In plaintiff's complaint it is alleged that the plaintiff is a domestic corporation engaged in the business of exporting and importing merchandise, and that prior to the events alleged and set forth in the complaint, the plaintiff and defendant had from time to time engaged as joint adventurers in the purchase and sale of quicksilver and other commodities, each of the parties paying his or its own expenses and sharing the losses or profits arising from such transactions, equally; that in all such transactions the necessary funds for the purchase of said commodities were furnished by the defendant, while the work of selling the same was performed by both parties.

The complaint further alleges as follows:

" *Third.* On or about the 26th day of June, 1919, the plaintiff and defendant entered into an agreement whereby it was agreed that the plaintiff and defendant should, as joint adventurers and in like manner, as in the previous transactions heretofore set forth, endeavor to enter into contracts with the United States of America either for the purchase of surplus supplies of the United States or to act as selling agents of the United States in selling and disposing of such surplus supplies, and it was further agreed between the parties hereto that any expenses incurred by either of the said

parties should be borne by such party as incurred them, and that any profits or losses should be divided equally between them."

The complaint further alleges that, after the making of said agreement between the parties and in reliance thereupon, the plaintiff and its agents conducted extensive and exhaustive inquiries concerning various supplies held by the government as surplus, consisting of trucks, quicksilver, fulminate of mercury, lumber, tin plate, rails, chemicals, locomotives, Sea Island cotton, and cotton linters, and from time to time furnished the defendant with information obtained by such inquiry and investigation and conferred with the defendant with reference thereto.

Plaintiff further alleges that thereafter and on or about the 25th day of July, 1919, the plaintiff and the defendant agreed that the efforts of the plaintiff should be confined to securing a contract with the United States of America, whereby the parties hereto should act as agents for the government in selling and disposing of surplus cotton linters for a commission to be paid by the government, and that it was further agreed that the said cotton linters should be sold in Europe and elsewhere outside the United States of America, and that certain selling agencies and export houses should be employed in disposing of said goods, and that the defendant should furnish the necessary funds and provide the bond necessary to enter into and to carry out said contract, and that the defendant should sell the said linters promptly and establish an organization for that purpose, because of the fact that the 1920 crop of cotton linters, when received, would lower the price of the said linters; that thereafter, relying upon such agreement, the plaintiff and its agents held numerous interviews with various officers and departments of the United States government, with the officials of various commercial and trading associations engaged in or interested in the sale of cotton linters, prepared data as to the number of bales owned by the United States government, the location and condition of the same, and as to freight and insurance rates, and secured data for the classification of said bales, and information concerning market conditions for such linters, both here and in Europe, and made schedules setting forth said information; that pursuant to said agreement between the parties and as the result of services rendered and expenditures incurred by plaintiff, amounting to $2,650, the defendant entered into a contract with the United States of America, whereby he agreed to sell the cotton linters then owned by the United States, amounting to about 770,721 bales for the United States, and the United States agreed to pay said defendant, as compensation for his services in selling the said linters, a commission of two and one-half per cent

of the net prices at which said cotton linters should be sold; that it was further agreed between said defendant and the United States of America that mattress linters, grade No. 1, should be sold at not less than eight and one-half cents per pound; that mattress linters, grade No. 2, should be sold at not less than seven cents per pound; that mattress linters, grade No. 3, should be sold at not less than six and one-half cents per pound; that munition linters should be sold at not less than three cents per pound, and bleached linters at not less than four cents per pound.

Plaintiff further alleges that immediately prior to the execution of said contract by the defendant with the United States it was agreed between the plaintiff and the defendant that said contract should be signed by the defendant only and carried out for the benefit of both the plaintiff and the defendant, and that the defendant agreed to sell and dispose of said cotton linters promptly, and that the plaintiff agreed to assist in selling the same, and that it was further agreed that the profits of said contract should be divided equally between the plaintiff and the defendant, each of said parties bearing the expenses incurred by said parties in carrying out said contract.

Plaintiff further alleges that immediately after the signing of said contract between the defendant and the United States of America on October 9, 1919, the said defendant refused to permit the plaintiff to participate in the handling of the said linters, although the plaintiff duly tendered its services to defendant, and refused to accept the plaintiff's advice as to the disposition of the same, or to consult with the plaintiff, its officers or agents, and refused to permit the said linters to be handled by said selling agencies, and refused to sell said linters in Europe, and refused to create an organization to sell the same, and neglected and refused to sell the same promptly, as theretofore agreed upon by the said parties.

The plaintiff further alleges readiness, ability and willingness to perform any and all services necessary or proper in connection with said sales, and due performance on the plaintiff's part of the terms of said contract to be performed.

Plaintiff further alleges that the defendant thereafter sold a portion of said cotton linters and received from the United States of America as commission $47,007.32, but has refused to pay over to the plaintiff one-half of the said commission, or any part thereof, although payment of the same was duly demanded; that said defendant thereafter and on or about December 9, 1920, refused to proceed with the sale of said linters, and, without the consent of the plaintiff, induced the United States government to enter into a

new contract canceling the said contract for the sale of said linters theretofore entered into with said defendant, and discharging the defendant from all liability thereunder.

Plaintiff, upon such allegations, alleges that by reason of the defendant's said breach of the contract and failure to pay over to the plaintiff one-half of the said commissions received by him, and by reason of the defendant's refusal to perform the said contract as agreed with the plaintiff, the plaintiff has suffered damages in the sum of $200,000, for which judgment is demanded, with interest.

The defendant demurred to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The court held with the defendant, sustaining said demurrer. In deciding the case, the learned justice presiding handed down a brief opinion, wherein it was held that the complaint was framed as one at law for damages claimed to have been sustained by the plaintiff by reason of defendant's breach of the contract alleged to have been entered into between the parties; that it appeared from the complaint that the plaintiff and defendant were engaged in a joint venture with respect to a government contract, by which the plaintiff was entitled to an interest in the commissions to be earned, and that the law with reference to the rights of partners was applicable to the case. The court held that an action at law could not be maintained against the defendant until after a full accounting and balance struck between the parties.

Undoubtedly an action at law between partners would not lie for a part of the proceeds or profits of such copartnership until after an accounting was had and a balance struck; but the difficulty, it seems to me, with the respondent's position here is that this action is brought, not for an accounting between partners, but to recover damages by reason of defendant's breach of the contract to engage in a joint venture for the sale of said cotton linters. The allegation of the complaint is that while the parties had agreed to enter upon this joint venture, and while the plaintiff had been instrumental in procuring the contract with the government, immediately after said contract was executed between the government and the defendant, the latter refused to permit the plaintiff to participate in any way therein, declining all advice of the plaintiff, its officers and agents, with reference to the sale and disposition of said linters, and entirely repudiating the alleged contract into which the complaint alleges the plaintiff and defendant had agreed to enter. The allegation of the complaint is that after the defendant had thus refused to permit the plaintiff to participate in the contract and had refused to recognize it further in the transaction, the

defendant for a time executed the contract which he had with the government of the United States and received commissions amounting to $47,007.32; and that thereafter the defendant, still refusing to recognize the plaintiff in any way, induced the United States government to enter into a new contract canceling the prior contract for the sale of said linters and discharging the defendant from all liability thereunder; and that by reason of defendant's breach of contract the plaintiff had suffered damages in the sum of $200,000.

Plaintiff did not frame its complaint in equity, and has not asked for an accounting between itself and the defendant, but is seeking to recover in an action at law for damages suffered by it by reason of defendant's breach of contract. Under the allegations of the complaint apparently no partnership ever existed between the parties. There was, at most, an agreement to form a copartnership or to engage in a joint venture, which the defendant refused to perform, and plaintiff now seeks its damages by reason of such breach. Plaintiff alleges in its complaint that defendant's breach of the contract occurred *immediately* after defendant had entered into the contract with the government and before he had received any commission thereunder. (*Manny* v. *Burke*, 174 App. Div. 654; *Powell* v. *Maguire*, 43 Cal. 11.)

Even though the allegations of the complaint were sufficient to show that the parties had entered into a copartnership agreement, and that thereafter the defendant wrongfully excluded plaintiff from a participation therein, plaintiff might, nevertheless, not only sue for an accounting, but, independently of seeking such equitable relief, bring action at law for damages sustained by reason of the defendant's breach. The rule is succinctly stated by Rowley in his work on " The Modern Law of Partnership " (§ 769) as follows: " Where the term has expired or the excluding partner has put an end to the business, the excluded partner has a right in an action at law to recover as damages his share of the profits. The right of a partner to an account of profits in equity when wrongfully excluded from the business by his copartner does not exclude his right to sue at law and recover profits as damages." In *Zimmerman* v. *Harding* (227 U. S. 489), Mr. Justice LURTON, writing for the United States Supreme Court, said (at p. 494): " Neither is the remedy in equity for a breach of a partnership agreement exclusive. There may be at law a recovery of all the damages which result, including damages for profits prevented by a wrongful dissolution. Thus if one member assumes to dissolve a partnership before the end of the term, the other may bring an action for damages for the breach and recover not only his

interest, but also his share of the profits which might have been made during the term. He need not wait until the expiration of the period and need not go into equity for an accounting, but may at law show the probable profits which he has been deprived of." (See, also, *Karrick* v. *Hannaman*, 168 U. S. 328.)

The courts of this State have frequently held that, where a partner assumed to dissolve a partnership before the end of the term agreed upon, or where, prior to the commencement of the partnership or joint venture, he disaffirms his contract, he is liable in damages in an action at law. (*Bagley* v. *Smith*, 10 N. Y. 489; *Hagenaers* v. *Herbst*, 30 App. Div. 547; affd., on opinion below, 164 N. Y. 603.)

Under the circumstances of this case the plaintiff was not confined to an action in equity to compel an accounting by the defendant, but might sue at law for the latter's breach of contract. It seems to me, therefore, that the plaintiff has well stated a cause of action in its complaint, and that the order appealed from, sustaining defendant's demurrer and granting his motion for judgment on the pleadings, was erroneous and should be reversed, with ten dollars costs and disbursements, and that plaintiff's motion for judgment on the pleadings should be granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, defendant's motion denied and plaintiff's motion granted, with ten dollars costs, with leave to defendant to withdraw demurrer and to answer on payment of said costs.